IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | 19-50339-cag |
| DONNA SHUTE PROVENCHER | § § § | Chapter 7 |

| | | |
|---|---|---|
| JOSEPH MAZZARA | § § | ADVERSARY NO. |
| VS. | § § | 19-5026 |
| DONNA SHUTE PROVENCHER | § § § | |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.**
**IF NO TIMELY RESPONSE IS FILED WITHIN TWENTY ONE (21) DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD.**
**A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

## A. Introduction

Summary judgment should be granted in this case because the default judgment in the Virginia state court case attached as Exhibit D1 cannot be excepted from discharge based upon collateral estoppel. The Virginia case was not actually litigated.

Summary judgment should be granted in this case because the allegations in the Warrant in Debt attached as Exhibit D2, even if true do not state a claim for relief under §523(a)(6) as they do not plead a claim for deliberate and intentional injury as required under Virginia defamation law or *In re Geiger*.

## B. Statement of Jurisdiction, Venue and Relief Sought

1. This court has jurisdiction to enter a final judgment in this case; it is a

1

core proceeding. Venue is proper (11 U.S.C. § 157(b)(2)(I)). This Motion is filed pursuant to Rule 56 and Rule 12(c).

2.  The parties to this case are the Plaintiff, Thomas Mazzara and the Defendant, Donna Provencher is also the Debtor in this case having filed Chapter 7 on February 15, 2019.

3.  Plaintiff filed this dischargeability complaint to prevent discharge of a default judgment attached as Exhibit D1 to this Motion. Plaintiff claims that the judgment bars re-litigation of his defamation claim against Defendant entitling him to a non-dischargeable judgment in the amount of $25,000. Paragraph 9[1] of the Complaint states re-litigation is barred and cites three preclusion doctrines: collateral estoppel, *res judicata* and the *Rooker/Feldman* doctrine in support of this premise. *Res judicata* and *Rooker/Feldman* do not apply. Collateral estoppel applies. Plaintiff has not met the elements of collateral estoppel under applicable law. The Defendant asks that the court enter an order finding that the Plaintiff is not, as a matter of law, entitled to a non-dischargeable judgment against Defendant based upon collateral estoppel.

4.  Plaintiff also asserts that the facts set forth in the Warrant in Debt attached as Exhibit D2 to this Motion are sufficient to "show that Defendant willfully and maliciously injured Plaintiff" in Paragraph 10[2] of his Complaint. The Plaintiff's allegations, in the Warrant in Debt if taken as true, fail to state a claim for a §523(a)(6) discharge exception because it does not describe a deliberate and

---

[1] Paragraph 9 of the Complaint reads: "As set forth in the Judgment entered in the Lawsuit, the Debtor "confessed" to a judgment on the Plaintiff's pleadings and did not disclaim either liability or damages for which she is responsible. As a result, she is barred by the doctrines of res judicata and collateral estoppel, the Rooker-Feldman doctrine and other applicable theories from asserting any defenses to Captain Mazzara's claims asserted in this adversary proceeding. As a result, Captain's Mazzara's liquidated claims against the Debtor are non-dischargeable."

[2] Paragraph 10 of the Complaint reads: In the alternative, without waiving the allegations or statements contained in Section 8 above, to the extent a trial on the merits is necessary, the evidence shall show that, as set forth in Exhibit "A", Defendant willfully and maliciously injured Plaintiff and, therefore, Captain Mazzara's claims against Defendant are non-dischargeable pursuant to §523(a)(6) of the Bankruptcy Code.

2

intentional act as required under Virginia defamation law or under *In re Geiger*.

## Statement of Undisputed Facts

1. On March 27th, 2018, Captain Mazzara filed a Warrant in Debt which was assigned case number GV18005269-00. The case was styled *Joseph Mazzara, Plaintiff v. Donna Provencher, Defendant* in the Chesterfield General District Court, 12th Judicial District of Virginia (the "Lawsuit").

2. A true and correct copy of the Virginia Warrant in Debt[3] is attached as Exhibit D1.

3. Defendant Donna Provencher filed Ch 7 on February 15, 2019, *In re Provencher,* Chapter 7 No. 19-50339.

4. Plaintiff Joseph Mazzara filed adversary proceeding No. 19-5026 on May 24, 2019.

5. Defendant filed her answer on June 12, 2019.

6. On June 19, 2019 this court entered an order granting relief from the automatic stay allowing the Lawsuit to proceed in Virginia. (ECF#34)

7. On July 1, 2019 an agreed order was entered abating this adversary proceeding pending the outcome of the Lawsuit.

8. On September 30, 2019 the court in Virginia entered judgment on the Warrant in Debt in favor of Plaintiff for $25,000.00.

9. A true and correct copy of the judgment is attached as Exhibit D2.

10. On February 9, 2020 the Defendant's counsel filed an advisory with the court (ECF#15) advising the court that judgment had been entered in the Lawsuit.

11. There is no evidence in the record from the Lawsuit that testimonial or documentary evidence was presented in the Virginia district court hearing.

12. There is no evidence in the record in the Lawsuit that a jury was impaneled.

---

[3] A "warrant in debt" is defined as a "civil claim for money" pursuant to Va. Code §16-1-79.

3

13. There is no evidence in the record from the lawsuit that any electronic or stenographic recording was made in the Lawsuit.

14. No witnesses testified in the Lawsuit.

15. No exhibits were offered or admitted into evidence in the Lawsuit.

16. The first page of Exhibit D2 is different from the cover sheet for Exhibit D1 as it contains notes entered after the Warrant in Debt (D1) was filed.

17. Aside from that distinction, Exhibits D1 and D2 are identical.

18. A *verbatim* copy of the Warrant in Debt is attached as Attachment A to Exhibit D2.

## Argument and Authorities

### I. Applicable Law

1. **Summary Judgment**

Summary judgment is proper in a case in which there is no genuine dispute of material fact (FED. R. CIV. P. 56(a); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A defendant who seeks summary judgment on a plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of the plaintiff's claim or (2) showing there is no evidence to support an essential element of the plaintiff's claim. *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996); *see Celotex Corp.*, 477 U.S. at 322-23.

2. ***Res Judicata* and *Rooker/Feldman* do not apply in dischargeability cases.**

The *Rooker/Feldman* doctrine holds that federal district courts lack jurisdiction to entertain collateral attacks on state judgments and lack jurisdiction to exercise appellate jurisdiction over state court proceedings.[4] This adversary

---

[4] *Lance v. Dennis,* 546 U.S. 459, 463 126 S.Ct. 1198 (2006).

4

proceeding is a core proceeding to determine dischargeability of a debt based upon a default judgment on which the plaintiff prevailed. There is no need for the plaintiff to obtain "appellate relief" as he won by default in the state court case. It is not a collateral attack on the Virginia Judgment. *Rooker/Feldman* does not apply.

    *Res judicata* is claim preclusion; it is not issue preclusion. Claim preclusion would allow a state court to compel this court to deem a state court judgment the equivalent of a non-dischargeable judgment. This court is the sole forum with jurisdiction to determine discharge issues under 28 USC §157 and §1334. This is affirmed in *Brown v. Felsen* an early case which emphasized that the bankruptcy court has exclusive jurisdiction to determine certain discharge issues.[5] *Brown v. Felsen,* 442 U.S. 127, 136-39 (1979).

### 3. Collateral Estoppel is interpreted under Virginia law in this case

    Under federal common law[6] and Title 28[7] collateral estoppel analysis of state court judgment is based upon the law of the state where the judgment is entered. When determining whether collateral estoppel arises from a prior state court judgment, federal courts apply the law of the state in whose courts the prior judgment was entered.[8] Texas and the Fifth Circuit agree that collateral estoppel analysis applies the law of the state where the judgment was entered.[9] Therefore

---

[5] We reject respondent's contention that *res judicata* applies here and we hold that he bankruptcy court is not confined to a review of the judgment and record in the prior state court proceedings when considering the dischargeability of respondent's debt. *Brown v. Felsen,* 442 U.S. 127, 140, 99 S. Ct. 2205, 2213, 60 L. Ed. 2d 767 (1984).

[6] *See Haring v. Prosise,* 462 U.S. 306, 312-16, 76 L. Ed. 2d 595, 103 S. Ct. 2368 (1983) (applying Virginia law to determine the preclusive effect of a prior Virginia court judgment)

[7] 28 U.S.C. § 1738, statutory "full faith and credit"

[8] *In re Ansari*, 113 F.3d 17, 19 (4th Cir. 1997).

[9] *In re Stowell*, 113 B.R. 322, 326 (Bankr. W.D. Tex. 1990).

5

Virginia law is the controlling authority for review of the collateral estoppel effect of this Virginia judgment.

## II.

**The Virginia default judgment is not entitled to collateral estoppel treatment.**

**A.  Elements of Collateral Estoppel under Virginia Law**

Under Virginia law, a party invoking the doctrine of collateral estoppel bears the burden of establishing the following five elements set forth in *TransDulles v. Sharma,* 252 Va. 20, 472 S.E.2d 274, 275 (Va. 1996)). They are as follows:

(1) that the parties to the two proceedings are "the same or in privity";

(2) that the prior proceeding "resulted in a valid and final judgment against the party against whom preclusion is sought or his privy";

(3) that the factual issue to be precluded was "actually litigated in the prior proceeding";

(4) that the factual issue to be precluded was "essential to the judgment in the prior proceeding"; and

(5) that there was "mutuality, 'that is, a party is generally prevented from invoking the preclusive force of a judgment unless that party would have been bound had the prior litigation of the issue reached the opposite.[10]

**B.  There was no "actual litigation" in Virginia**

The Fourth Circuit applying Virginia law holds that a default judgment on a "warrant in debt" essentially a money judgment, entered without factual and legal support in the form of documents and testimony does not meet the "actually litigated" requirement of collateral estoppel. In at least one case the Fourth Circuit reversed a bankruptcy court summary judgment finding that a state court default judgment for a debt was not the product of actual litigation and therefore not issue

---

[10] *TransDulles Center, Inc. v. Sharma,* 252 Va. 20, 472 S.E.2d 274, 275 (Va. 1996)).

preclusive. *Capital Hauling, Inc. v. Forbes,*[11] involved a claim for debt which resulted in a post-answer[12] Virginia default judgment against the eventual debtor, Mr. Forbes. The creditor sued Forbes in his Chapter 13 seeking relief under 11 USC §523(a)(2)(A). The Fourth Circuit stated that while a default judgment may create collateral estoppel, the state court case must be actually litigated citing *TransDulles* stating that the actually litigated element of collateral estoppel required proof in the record establishing that "testimonial and documentary evidence was presented" in the state court proceeding, or that "proof was presented" of any kind as to whether appellant committed fraud.[13] The creditor obtained a money judgment against Forbes, but was not entitled to expand that money judgment into a nondischargeable fraud judgment.

**C.    There were no findings and no record made in Virginia**

In this case, there is no proof that "testimonial and documentary evidence" was presented in the state court. Plaintiff's basis for claiming collateral estoppel consists of one page of notes. The judgment consists of the plaintiff's Warrant in Debt together with a cover sheet which enters a money judgment for $25,000.00 on September 30, 2019. There are no exhibits attached to it other than Attachment A, which is a verbatim recitation of the Warrant in Debt with the words "Attachment A" at the top of the first page. There is no record to support the judgment for debt. No documents were offered or admitted, no witnesses were called no one testified, no findings of fact or conclusions or law were made except a finding that Ms. Provencher owes Mr. Mazzara $25,000.00. The first page of Exhibits D1 and D2 differ, otherwise the two Exhibits are identical. A docket notation turned the Warrant in Debt into a default judgment for debt with no proof that any litigation

---

[11] *Capital Hauling, Inc. v. Forbes,* 75 Fed. Appx. 170 (4th Cir. 2003).
[12] Forbes participated in the case until his nonappearance on the trial date.
[13] 75 Fed. Appx. at 171

7

took place. There is no support for entry of a money judgment in the amount of $25,000 other than the bare, unresolved allegations set forth in the Warrant in Debt. Mazzara's money judgment cannot be expanded into a non-dischargeable defamation judgment under *Capital Hauling* and *TransDulles*.

**D. The missing mutuality requirement also bars collateral estoppel.**

1. The record, such as it is, based upon the Warrant in Debt and the Default Judgment doesn't have any allegations or findings that refer to or support a judgment for §523(a)(6); the court made no conclusion that the debt was "willful and malicious" under Title 11. The same issue arose in Lewis v. Long[14] after Long's plea to unlawful carnal knowledge did not fit the mutuality element and failed to satisfy Lewis' claim that it amounted to proof of intent to injure.[15] The default judgment lacks any reference to the legal standard set forth in *Geiger* which requires a finding that the conduct was "deliberate and intentional" so that §523(a)(6) applies and the same deficiency was noted in *Lewis v. Long* barring collateral estoppel treatment. Thus the mutuality requirement is also problematic for the Plaintiff. The Plaintiff had the opportunity to craft a judgment that included findings of deliberate and intentional conduct and willful and malicious conduct; default judgment was entered at a hearing held after the adversary proceeding was filed.[16]

### III. THE WARRANT IN DEBT
### Introduction

The allegations stated in the Warrant in Debt are not sufficient to establish essential elements of the plaintiff's claim dischargeability claim under federal law

---

[14] *Lewis v. Long,* 521 B.R. 745 (W.D. Va. 2014).
[15] Id. at 753.
[16] Date of adversary, date of lift stay order, date of judgment

and Virginia law.  *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996).

**A.   The statements attributed to the defendant even if true do not adequately plead a cause of action under Virginia law to support a non-dischargeable judgment.**

**1. The allegations and "best light" conclusions**

(a) Allegation Warrant in Debt/Default Judgment Attachment A Paragraph 7

> On or around 01/17/2018 Donna Provencher posted a message on the Christendom College Alumni Facebook page, in response to a discussion regarding Christendom College's handling of alleged rapes and alleged sexual assaults perpetrated, by their students, stating:
> "Tom McKenna [.][sic]**People [sic] who say things that have been said about** Adele and other victims in here, **or suggested** that Seth Riggio, Johnny Sower (who was expelled [from Christendom] for rape and is still in this group), whichever Marshner kid raped several women (before my time and I didn't know him), Dominick" Severance, Ed Mudd, **Joe Mazzara**, and others **were unjustly accused and the women were "not credible"** or have suggested that Christendom College's administration could not possibly have dropped the ball in 15+ [sic] rape cases, are in fact enabling such behavior to continue and for there to be more of the same. That's a fact, and it is tragic that we can't all band together and demand accountability from the administration going forward in sexual assaults on off campus, perpetrated by the students. "

(b) Warrant in Debt/Default Judgment Attachment A Paragraph 8

> 8. These statements were posted on a thread discussing the issues that Christendom College was having investigating disciplining, and preventing sexual assaults and rapes on and off their campus by their students.

**Conclusions**

The statements in Paragraphs 7 and 8 do not describe any deliberate or intentional conduct directed toward Joseph Mazzara with the intention to harm him. Viewed as true, the statement repeats a rumor that Mazzara was unjustly accused in connection with investigations at Christendom.

(c) Allegations and Conclusions Warrant in Debt/Default Judgment Attachment A Paragraph 17

> 17. After Donna Provencher posted this comment about Captain Mazzara, both Rand Lee Brown, II and William Diem cautioned her about making unfounded accusations with Brown recommending that she ""Be really careful about naming names (Especially names for which you have zero legal proof for ... )", and William Diem admonishing her that "'[she] crossed a line here (and earlier) by naming names as you casually but confidently repeated accusations, of which your knowledge is at best, second hand."

9

## Conclusions

The admonitions alleged to have been by Messrs. Brown and Diem do not identify Mazzara as one of "the names for which you have zero legal proof for". There is no connection between their admonitions and statements alleged to have been made by Provencher about Mazzara. This statement also does not identify Mazzara as one of those for which defendant "nam[ed] names as you casually but confidently repeated accusations, of which your knowledge is at best, second hand."

(d) Allegations and Conclusions Warrant in Debt/Default Judgment Attachment A Paragraph 18

> 18. Despite this caution, Donna Provencher doubled down stating "[t]hat those allegations [about the people in her previous post] occurred about those individuals is indisputable. Truth is an absolute defense against liable."

## Conclusions

There is no connection between the admonitions and the statements alleged to have been made by Provencher about Mazzara. This statement also does not identify Mazzara as one of those for which defendant "nam[ed] names". The statement attributed to Defendant does not identify Mazzara as one of "those individuals" about whom the truth of allegations is (or is not) an absolute defense.

(e) Warrant in Debt/Default Judgment Attachment A Paragraph 22

> 22. When confronted about her Captain Mazzara statement. Donna Provencher stated that "I don't know anything about the Joe Mazzara situation except that I heard it vaguely rumored at the time **(a)** and he [Captain Mazzara] told me about it in super veiled terms at that time, and Kateri [Ambrow] namedropped it in the thread and said the school dismissed the girl right away as not credible." **(b)** This indication that it was "vaguely rumored" and "told in super veiled terms" is contrary to Donna Provencher's earlier statement that the fact that "those allegations occurred about those individuals **(c)** is indisputable.

## Conclusions

(a)This allegation precludes any inference that Provencher acted willfully or maliciously to harm Mazzara.
(b)This statement is an admission by Mazzara that he *told the Defendant* that he had been accused by a witness who had no credibility.
(c) Mazzara is not identified as one of the individuals in paragraph 22.

10

### B. The online statements are not sufficient to support a defamation action

Merely because the statements may be deemed to have a false factual connotation, however, is not sufficient to support a defamation action. See, *Katz v. Odin, Feldman & Pittleman*, P.C., 332 F. Supp. 2d 909 (E.D. Va. 2004) stating "and the fact that some of the alleged statements may have been false, without more, is not sufficient to maintain a cause of action for defamation.". The statements must also be capable of having a defamatory meaning. *Erasmo v Rolling Stone, LLC* 209 F. Supp. 3d 862, 875 (W.D. Va. 2016). Provencher's comments did not directly attribute any wrongful conduct to Mazzara. The Provencher's Mazzara-specific comments consist of statements he made regarding the fact that his supposed accuser was not credible.

There is no direct reference to Mazzara committing any assault. There is no direct reference to Mazzara undergoing investigation which led to an unfavorable result. Provencher expressly states that her conversation with Mazzara involved the falsity of the allegations against him. It does not create any representation or infer that she made any false statements of wrongful conduct specifically directed to Mazzara, only Mazzara's statements confirming that his accuser was not credible.

Even if Provencher's statement regarding the investigation is assumed to be false, that alone cannot support a claim. Provencher's conduct may exhibit negligence by placing Mazzara's name in a list of individuals alleged to have been investigated. It is ameliorated by the statement that Mazzara was falsely accused.

### C. The allegations in the Warrant in Debt incorporated into the Complaint do not state a claim under *Geiger*.

The black letter law for §523(a)(6) claims is as follows:

(a)     *Kawaauhau v Geiger*,[17] holds that §523(a)(6) applies only to "acts done with *the actual intent to cause injury*."

(b)     *Kawaauhau v Geiger* holds that §523(a)(6) is *not satisfied by negligent, grossly negligent or reckless* conduct.[18]

(c)     The mere fact that a debtor engaged in an *intentional act does not necessarily mean that he acted willfully and maliciously* for purposes of § 523(a)(6).[19]

(d) [N]ondischargeability takes a *deliberate or intentional injury, not merely a deliberate or intentional act* that leads to injury."[20]

**D.     The Warrant in Debt, taken as true does not prove "willfulness".**

For purposes of § 523(a)(6), "willfulness" is defined as an act taken with "substantial certainty [that] harm [would result] or a subjective motive to cause harm." *Miller v. J.D. Abrams Inc.* (*In re Miller*), 156 F.3d 598 (5th Cir. 1998). The acts described in Paragraphs 7, 8, 17, 18, and 22 do not describe conduct (even if taken as true) that shows a "substantial certainty that harm would result". Most of the statements do not directly target Mazzara and the single statement attributable to him states that he was falsely accused and Provencher recounts this statement and it the circumstances surrounding it objectively. No reasonable person could draw the conclusion that his statement regarding the witness' lack of credibility was false. There is no way a reasonable person could conclude that Provencher believed Mazzara's statements regarding the investigation were false.

---

[17] 523 U.S. 57, 118 S.Ct. 974 (1996).
[18] *Id.* 523 U.S. at 62-64; (citing cases).
[19] *In re Williams*, 337 F.3d 504, 509 (5th Cir. 2003); *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 604 (5th Cir. 1998).
[20] *Geiger*, 523 U.S. at 61 (emphasis in original).

### E. The Warrant in Debt if true shows intent, which is insufficient.

The statements taken as true may constitute evidence that Provencher made statements sufficient to establish a claim for defamation under Virginia law. Intentional wrongful conduct is not ipso facto proof that Mazzara sustained a willful and malicious injury. The Warrant in Debt viewed in its worst light does not show Provencher acted with intent to deliberately injury Mazzara in the Facebook posts. Proof of defamation alone is not sufficient to establish willful and malicious conduct and "malice" as used in defamation cases is not a cognate of "malicious" when it is used in §523(a)(6).[21]

### F. The statements if true are inconsistent and do not support a discharge exception.

Assuming *arguendo* that Provencher's statements regarding Mazzara in Paragraphs 7, 8, 17 and 18 identify him with sufficient specificity and are true they are at best reckless or grossly negligent. Mazzara is named in Paragraph 22. If all statements are taken as true, there is an arguable inference that Provencher's statements in 7, 8, 17 and 18 were made with her previous knowledge of the false accusations against Mazzara that he told her in "super veiled terms" described in Paragraph 22. Provencher's alleged statements viewed in aggregate as true, describe, at worst, reckless conduct which is not non-dischargeable under 11 USC §523(a)(6). Provencher's statements are at worst the basis for weak negative inferences which were arguably harmful to Mazzara, while they may be reckless, or defamatory *per se* they were not intended to or substantially certain to injure Mazzara.[22]

---

[21] *In re Kamps* 575 B.R. 62, 78 (Bankr.E.D.Pa. 2017)
[22] *In re Kamps,* 575 B.R. 62, 78 (Bankr.E.D.Pa. 2017) Client's defamatory statements to attorney's existing and former clients which resulted in state court judgment were held to be reckless in client/debtor's §523(a)(6) but were not a basis for the discharge exception as they were not intended or substantially certain to harm attorney.

13

## Conclusion

The Virginia default judgment cannot be the basis for collateral estoppel relief – the case was not actually litigated and there was not mutuality of relief. The Warrant in Debt's allegations, if taken as true, and if assumed *arguendo* to be defamatory still do not establish that any injury was sustained, and do not show that the statements if defamatory were willful and malicious, deliberate and intentional or substantially certain to injury Mazzara.

## Prayer for Relief

Plaintiff asks that this court enter an order granting summary judgment as follows:

a.  Finding that the Virginia Default Judgment (Exhibit D2) does not prove as a matter of law or as a matter of fact one or more of the elements necessary to establish a dischargeability exception under Virginia law common law pertinent to the collateral estoppel effects of a judgment;

b.  Finding that the allegations in the Warrant for Debt (Exhibit D1) do not support, either as a matter of fact or as a matter of law one or more of the elements necessary for a claim under §523(a)(6);

c.  Ordering that this adversary proceeding is dismissed.

```
LAW OFFICES OF MICHAEL J. O'CONNOR
921 Proton Road
San Antonio, Texas  78258
Phone:  (210) 729-6009
Fax:    (210) 729-6003
Email: oconnorlaw@gmail.com
By:    /s/Michael J. O'Connor
        Bar No. 15187400
```

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion for Summary Judgment has been forwarded pursuant to Rule 5, Fed.R.Civ.P. on August 10, 2020 to the Defendants' counsel: William B. Kingman, Law Office of William B. Kingman, 3511 Broadway, San Antonio, Texas 78209 via email to bkingman@kingmanlaw.com and via email to hdeangelo@kingmanlaw.com and via regular mail.

*Michael J. O'Connor*