UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| DONNA SHUTE PROVENCHER, | § | CASE NO. 19-50339-CAG |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| JOSEPH MAZZARA, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | ADV. NO. 19-05026-CAG |
| | § | |
| DONNA SHUTE PROVENCHER, | § | |
| | § | |
| Defendant | § | |

**DEFENDANT DONNA SHUTE PROVENCHER'S
TRIAL BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

The members of the Secret Facebook Group "Christendom Survivors: The Order of the Phoenix" ("the Phoenix Group") is a group specifically restricted to Christendom Alumni who are sexual assault survivors and their supporters. Access to the Group's communications and postings is limited to its members, who may participate only with the approval of the existing membership. The Defendant's Motion for Protective Order seeks to prevent access to certain communications between the members of the Order of the Phoenix Secret Facebook Group. The communications have been produced for *in camera* review by the court.

These postings took place after the Facebook postings on the Christendom

1

College members only Facebook group on January 17, 2018 led to this lawsuit.

The members of the Phoenix Group reasonably expected that they expected the postings to be private. The Phoenix Group is limited to survivors of sexual assault and their supporters. Sexual assault is an emotionally charged topic and individuals are uneasy when discussing the issue in a with persons on a limited access forum such as a "friends only" Facebook page.

If the Private Postings are not protected from disclosure the Postings will be exposed and the identities and thoughts of the Phoenix Group members will be subject to review by the plaintiff – who has no right or authority to participate in the group. The members of Group are non-parties and participants in an email exchange which took place over three years ago. They have a constitutionally protected reasonable expectation of privacy which they would lose if the Private Posts are compelled to be produced. The following is the common definition of a Secret Facebook Group.

> Even more private than the closed Group is the secret Group. This type of Group is exactly what you would expect it to be — secret. Nobody on Facebook can see a secret Group other than those in the Group.
>
> This Group will not appear anywhere on your profile, and only those within the Group can see who the members are and what is posted. These Groups could be used if you are planning an event that you do not want somebody to know about, or if you just want a secure platform to talk with friends.
>
> Another example might be a family who wants to share pictures and news with each other on Facebook but without other friends seeing everything.[1]

Courts recognize the distinction among Facebook's group privacy

---

[1] https://www.lifewire.com/facebook-groups-4103720

2

definitions; this was illustrated in a class action case involving price fixing allegations where the court clearly distinguished the privacy levels accorded Facebook groups.

> UPP [unilateral pricing policies] Violations was Facebook group founded by Dr. Glazier, who also administers another Facebook group, ODs on Facebook. The violations group was secret; participants must be invited, and the administrator must accept the member. *In re Disposable Contact Lens Antitrust Litig.*, 2019 U.S. Dist. LEXIS 209400, at *108 (M.D. Fla. Nov. 27, 2019)

The Order of the Phoenix Group, like Dr. Glazier's, was a secret group on which posts may only be shared with other group members. The Facebook friends of group members do not have access to the group members post among themselves.

## Privacy rights in civil and criminal cases

**A. Introduction**

The broad scope of civil discovery and its effect on privacy rights has been criticized since 1976.

> *"[T]he power for the most massive invasion into private papers and private information is available to anyone willing to take the trouble to file a civil complaint. A foreigner watching the discovery proceedings in a civil suit would never suspect that this country has a highly-prized tradition of privacy enshrined in the fourth amendment."*[2]

**B. Privacy Rights and the Fourth Amendment**

Privacy is a basic Constitutional right, defined in the Fourth Amendment's inherent protection of the "reasonable right to privacy". "The touchstone of Fourth

---

[2] Simon H. Rifkind, *Are We Asking Too Much of Our Courts?*, 15 Judges J. 43 (1976).

3

Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" (quoting Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring))); *Katz*, 389 U.S. at 361 (1967). To establish a reasonable expectation of privacy, a person must show (1) that he manifested a subjective expectation of privacy in the item searched or seized; and (2) a willingness by society to recognize that expectation as legitimate. *Rehberg v. Paulk*, 611 F.3d 828 11th Cir.2010).

C. **Criminal Privacy Exceptions and Social Media**

Generally, a party has limited privacy rights which are protected only in the event the posting party takes measures to secure those rights. Colon was a witness in a criminal case. The government sought his Facebook postings and account. The court found that when Facebook privacy settings chosen by the party who sets up their page or group allow viewership of postings by "friends," the Government may access them through a cooperating witness who is a "friend" without violating the Fourth Amendment. The court further noted that wider [Colon's] circle of "friends," the more likely the individual's posts would be viewed by someone he never expected to see them.

An individual's legitimate expectation of privacy ended when he disseminated posts to his "friends" because those "friends" were free to use the information however they wanted—including sharing it with the Government. When an individual posted to his Facebook profile and then shared those posts with his "friends," he did so at his peril. Because Colon surrendered his expectation of privacy, the Government did not violate the Fourth Amendment when it accessed Colon's Facebook profile through a cooperating witness. *United States v. Meregildo*, 883 F. Supp. 2d 523, 526 (S.D.N.Y. 2012).

A civil defendant's right to privacy is no different than the same right enjoyed by a defendant accused of a crime. There are civil remedies for invasion

4

of privacy which protect that right which are corollaries to federal law excluding evidence obtained in violation of the Fourth Amendment. A party who makes disclosures to his Facebook "friends" loses his expectation of privacy. In this case there has been no such waiver, the Phoenix Group's members and administrator set up the Facebook group for the express purpose of preserving the members' privacy rights.

D.   **Civil Privacy Exceptions**

When a party sues for damages they place their privacy rights at risk. Exceptions to privacy protection for online postings are most common when a party claims physical injury damages and despite a claimed impairment posts pictures on their Facebook page showing their Facebook friends that they are enjoying waterskiing, weightlifting, etc. despite their claims of physical injury. These postings are used to impeach the defendant. It is logical to conclude that a party who seeks to recover damages for personal injury waives her right to claim that activities undertaken in public (electronically published or not) are protected by privacy rights.

There is limited authority addressing the rights of a plaintiff seeking discovery of a defendant's Facebook posts to advance their interests in a civil lawsuit. There is a presumption that a party suing for damages has waived their rights to privacy.  Ms. Provencher is not suing for damages. This truism cannot be extended to allow a plaintiff to undertake a court-endorsed quest through secret website postings.  There is no case law authorizing a civil plaintiff to "troll" for liability facts at the expense of the privacy rights of the defendant and fellow members of a secret Facebook group.

E.   **Evidentiary Threshold for Civil Privacy Exceptions**

Civil defendants must meet an evidentiary threshold before they may obtain the plaintiff's Facebook postings and profile. Courts have held that the private

5

section of a Facebook account is only discoverable if the party seeking the information can make a threshold evidentiary showing that the plaintiff's public Facebook profile contains information that undermines the plaintiff's claims. *See Potts v. Dollar Tree Stores, Inc.*, No. 11-CV-1180, 2013 U.S. Dist. LEXIS 38795, 2013 WL 1176504, at *3 (M.D. Tenn. March 20, 2013). Privacy rights may be voluntarily relinquished in online forums in some civil cases, but there is no authority which endorses abridgement of a third parties' privacy rights or the privacy rights of a defendant.

## Conclusion

In this case, the plaintiff is seeking information concerning posts made by the defendant in a private Facebook chatroom which is otherwise not open to public view or "friends" of members. The Group members expectation of privacy is evident. The Phoenix Group postings could not be reviewed by non-members because the Group designated itself as a Secret Facebook Group. Sexual assault is not a publicized experience it is a deeply personal and emotionally charged issue. Persons who have experienced sexual assault have a right to privacy that any civil society would wish to protect.

        LAW OFFICES OF MICHAEL J. O'CONNOR
        921 Proton Road
        San Antonio, Texas 78258
        Phone: (210) 729-6009
        Fax: (210) 729-6003
        By: /s/ Michael J. O'Connor
            Bar No. 15187400

## **CERTIFICATE OF MAILING**

      I hereby certify that a true and correct copy of the foregoing was served upon the Plaintiff by and through Plaintiff's counsel pursuant to Rule 5 Fed.R.Civ.P., on this 24 March, 2021, to the following:

William B. Kingman
Law Offices of William B. Kingman
3511 Broadway
San Antonio, Texas 78209
Via electronic transmission to bkingman@kingmanlaw.com

                              /s/ Michael J. O'Connor