**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| DONNA SHUTE PROVENCHER, | § | CASE NO. 19-50339-CAG |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| JOSEPH MAZZARA, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | ADVERSARY NO. 19-05026 |
| | § | |
| DONNA SHUTE PROVENCHER, | § | |
| | § | |
| Defendant | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL AND IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

**BACKGROUND**

Major Mazzara has moved to compel a limited set of documents that Ms. Provencher identified in the Virginia litigation as relevant and responsive to Major Mazzara's discovery requests. Ms. Provencher has sought to withhold these documents by a simple assertion of work product privilege, and a somewhat unusual theory that the conversations are covered by a "right to privacy."

These documents consist of approximately 55 pages of screenshots of conversations between Ms. Provencher and others via an electronic medium.[1] Ms.

---

[1] See Plaintiff's Exhibit 1 (defendant's privilege log).

Provencher has already turned over parts of many of these conversations in the course of this litigation, with neither an objection nor an effort to redact third-party names or any details of how those third-parties were victimized.[2] In fact, in numerous documents that Ms. Provencher has already handed over, she ignores any sense of propriety or sensibility over privacy and willy-nilly gives unredacted lists of names of women whom she believed were sexually harassed, assaulted, or raped. [3]

Major Mazzara is not asking the Court for permission to go fishing and to cast his net into the wide ocean that is Ms. Provencher's social media presence, public and private. He has not asked nor moved to compel unlimited, unfettered, or broad access to all of Ms. Provencher's social media content. He simply seeks production of documents Ms. Provencher herself first identified as relevant and responsive, and that the Ms. Provencher has decided to withhold in contravention of Major Mazzara's process rights.

## ARGUMENT AND AUTHORITIES

Major Mazzara's argument is straightforward:

(1) The limited set of documents he is seeking to compel are relevant, and neither

---

[2] See Plaintiff's Exhibit 2 (a screenshot from one of the private Facebook groups Ms. Provencher is referring to, without names redacted, that Ms. Provencher produced to Major Mazzara. In addition to names it contains derogatory allegations against Major Mazzara. Bates Numbered DP-0221).

[3] See Plaintiff's Exhibit 3 (these are screenshots from two separate private Facebook conversations, one between Ms. Provencher and an Adele Smith, and one between her and a Bridget Randolph. This exhibit consists of DP-0110, 0197, and 0199. These screenshots of private conversations were produced to Major Mazzara with names of alleged victims, and the names and pictures of the third parties she was messaging with, unredacted. Major Mazzara, unlike Ms. Provencher, has redacted the names of all the alleged victims from these documents for the sake of their privacy. Ms. Provencher's comments are in what appears to be blue or purple on the righthand side of the documents).

2

privileged nor protected by some privacy right, and therefore must be produced in accordance with his process rights under, at least, Rules 26, 34, and 37 of the Federal Rules of Civil Procedure.[4]

(2) The privilege Ms. Provencher asserts requires evidentiary support for such privilege and that Ms. Provencher has not provided such. Regardless of any such a showing, the privilege asserted is inapplicable to the documents in question.

(3) The right to privacy she asserts for communications between non-parties and herself doesn't exist, and, even if such right exists, she has waived her right to assert such a right.

A. **Major Mazzara's process rights to the production of relevant material is sufficiently broad that it encompasses the documents in question such that they must be compelled.**

Rule 26 of the Federal Rules of Civil Procedure states that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim[.]" The Fifth Circuit has held that the discovery rules "are to be accorded a broad and liberal treatment."[5] Given that "the scope of discovery is broad"[6] our "[c]ourts have traditionally construed "relevance" broadly: information is relevant if it 'encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"[7]

---

[4] And the corresponding Federal Rules of Bankruptcy Procedure governing adversary proceedings.

[5] *Hickman v. Taylor*, 329 U.S. 495, 507–508 (1947).

[6] *Crosby v. Louisiana Health Service and Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011).

[7] *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) *quoting Oppenheimer Fund, Inc. v.*

3

After the Courts repeatedly determined that Donna Provencher defamed Joseph Mazzara, there remains one last issue in this case: Ms. Provencher's state of mind when she lied about Joseph Mazzara.

The only way to determine Ms. Provencher's state of mind is by evaluating statements Ms. Provencher made about Major Mazzara before, during, and after she publicized her defamatory comments, along with the contexts of those statements. Neither Major Mazzara nor his counsel are Jedi such that they can read Ms. Provencher's mind without the aid of her written statements and their context. So, any comments regarding Major Mazzara that Ms. Provencher made that were proximate in time to, but before she posted her lie on the Christendom College alumni Facebook page, are relevant. As are any comments regarding Major Mazzara that she made while posting her lies, and any comments she made about Major Mazzara between her public defamation of him and the successful service of process in the Virginia action. Whether these comments were publicized to the whole world on a public blog, made in the confines of a private Facebook group or within a text message conversation between her and a confidant, that doesn't matter. If her statements are relevant or likely to lead to admissible evidence, they are discoverable and must be produced because of their relevance to the remaining issue in this case.

Major Mazzara proffers that Ms. Provencher, a writer and actress, has a significant and expansive social media presence in order to aid her success in both careers, and therefore she is also extremely active on social media. Major Mazzara

---

*Sanders*, 437 U.S. 340, 351 (1978).

has not asked Ms. Provencher to produce everything from her various social media accounts on Instagram, Facebook, Twitter, Pinterest, TikTok, YouTube, WhatsApp, LinkedIn, SnapChat, etc. Major Mazzara simply seeks to compel a limited set of documents that Ms. Provencher herself determined were responsive and relevant to his discovery requests, but which she withheld under a bald (and incorrect) assertion of "privilege."[8]

Major Mazzara is not asking for all conversations between Ms. Provencher and the people she identifies on her privilege log. Just for those documents she identifies on her privilege log that she herself has identified as responsive and relevant by the very fact they are even on that privilege log.

Given the broad scope of the discovery rules, the broad definition of relevance, and the admission by Ms. Provencher that those documents are responsive to Major Mazzara's requests for production of all relevant statements by Ms. Provencher, the production of these documents must be compelled.

**B. Ms. Provencher has failed to provide the requisite evidentiary showing needed to sustain an assertion of privilege and prevent production of relevant documents, and therefore the production of the documents in question must be compelled.**

Ms. Provencher has asserted "work product" privilege over approximately 55 pages of documents.[9]

The "party asserting a privilege exemption from discovery bears the burden of

---

[8] See Plaintiff's Exhibit 1. (privilege log).

[9] See plaintiff's Exhibit 1 (privilege log).

demonstrating its applicability."[10]  "The mere assertion of a lawyer in defendant's opposition memoranda or a privilege log that the statements were prepared in anticipation of litigation is not evidence sufficient to bear the burden."[11]  The "party asserting work-product protection must establish the following elements: first, the materials must be documents or tangible things; second, the party's primary motivating purpose behind creating the document must have been anticipation of litigation and to aid in possible future litigation; third, the materials must have been prepared by or for a party's representative; and fourth, if the party asserts that material is opinion work-product, that party must show that the material contains mental impressions, conclusion, opinions or legal theories of an attorney or other representative of a party."[12]

What Ms. Provencher is attempting to assert privilege over are "documents or tangible things."  However, she must meet all four elements described above to successfully assert that privilege over these relevant documents, not just that first one.[13]  Her burden is evidentiary, and she cannot and has not met it.  Simply producing the documents *in camera* does not meet this burden.[14]

---

[10] *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir.2001).

[11] *Pain Clinic, Inc. v. Bankers Ins. Co.*, No. CV 06-4572, 2007 WL 9780346, at *3 (E.D. La. Mar. 19, 2007) (*citing Monaghan v. Adkins*, 117 Fed.Appx. 923, 926 (5th Cir. 2004)).

[12] *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 417 (W.D. Tex. 2009).

[13] *Id.*

[14] *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2014 WL 1257597, at *2 (N.D. Tex. Mar. 27, 2014) ("As the undersigned has explained, although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the work product exemption still must provide "a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473–74 (N.D.Tex.2004) (quoting *Pippenger v. Gruppe*, 883 F.Supp. 1201, 1212

Ms. Provencher has provided no evidence that Major Mazzara threatened to sue her, or that she knew she was going to be sued by Major Mazzara prior to her being served in the Virginia action. Ms. Provencher has provided no evidence that the limited set of documents in question are "materials…prepared by or for" her attorney.[15] Ms. Provencher has provided no evidence, as required by her burden to successfully assert the work product privilege, that the limited set of documents Major Mazzara has sought is "material [containing] mental impressions, conclusion, opinions or legal theories of an attorney or other representative of a party."[16]

Because Ms. Provencher has not met her burden to successfully apply the work product privilege to these documents, has not even attempted to meet it, and cannot meet her burden, the production of these documents must be compelled.

C. **There are no privacy protections in common or civil law for material posted in private social media pages, and therefore the documents Ms. Provencher is attempting to withhold under a "right of privacy" must be produced.**

Ms. Provencher attempts to assert a right to privacy over the documents she continues to seek to withhold from Major Mazzara, in defiance of Major Mazzara's process rights under the federal rules and the Constitution.

But, "[Social Networking Site] content is neither privileged nor protected by

---

(S.D.Ind.1994)). In fact, "'resort to *in camera* review is appropriate only *after* the burdened party has submitted detailed affidavits and other evidence to the extent possible.' " *Id.* at 474 (quoting *Caruso v. Coleman Co.*, Civ. A. No. 93–CV–7633, 1995 WL 384602, at *1 (E.D.Pa. June 22, 1995) (emphasis in original))").

[15] *Stoffels*, at 417.

[16] *Id.*

any right of privacy."[17] "[M]aterial posted on a "private" Facebook page, that is accessible to a selected group of recipients but not available for viewing by the general public, is generally not privileged, nor is it protected by common law or civil law notions of privacy."[18] "Social media information is usually considered discoverable and "is neither privileged nor protected by any right of privacy."[19]

The Court may also *see Timms v. LZM, L.L.C.*, 657 Fed. Appx. 228 (5th Cir. 2018) (Awarding sanctions, default judgment, and fees and costs, when a party failed to turn over a private text message conversation between the party and a non-party); *Cooksey v. Hunt S. Grp., LLC*, No. 1:18CV49-LG-RHW, 2019 WL 3978417, at *2 (S.D. Miss. Aug. 22, 2019) (party ordered to produce all relevant private Facebook messenger messages); *Vasquez v. Conquest Completion Services, LLC*, 2018 WL 3611891, at *2 (W.D. Tex. Jan. 10, 2018) ("Because Defendant's cell-phone records will help the Parties prove or disprove Plaintiff's allegations, the cell-phone records are relevant and discoverable in this case") citing Fed. R. Civ. P. 26(b)(1) and

---

[17] *Davenport v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 555759 at *1 (M.D.Fla. Feb. 21, 2012).

[18] *Tompkins v. Detroit Metro. Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012).

Notably, Ms. Provencher cites *Tompkins* in one of her briefs to support her argument that withholding production of the documents in question is appropriate. But *Tompkins* supports Major Mazzara's contention that these documents are neither privileged nor do they fall under a right of privacy. In fact, the only reason why compulsion was denied the movant in *Tompkins* is because the defendant requested indiscriminate access to the plaintiff's private Facebook postings. In this case, Major Mazzara has only requested access to those postings that Ms. Provencher has already identified as relevant in a "privilege" log, and incorrectly withheld. Major Mazzara is not asking for a license to find whatever he can, but only for production of a specific number of pages of material identified by Ms. Provencher herself as relevant and responsive to prior requests for production.

[19] *McGowan v. S. Methodist Univ.*, No. 3:18-CV-141-N, 2020 WL 2199189, at *2 (N.D. Tex. May 6, 2020) (quoting *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 591 (N.D. Tex. 2016).

*Arceneaux v. Assuranceforeningen Gard Ins. Co.*, No. 09-654, 2010 WL 744922, at *2 (W.D. La. Feb. 25, 2010) (denying motion to quash the defendant's subpoena to the plaintiff's cell phone carrier because the information sought was relevant to the plaintiff's claims); *John Crane Grp. Corp. v. Energy Devices of Texas, Inc.*, No. 6:14-CV-178, 2015 WL 11089486, at *1 (E.D. Tex. Feb. 2, 2015) (compelling the production of private Facebook Messenger messages between a party and a non-party that were relevant to the case); *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2014 WL 1257597, at *1 (N.D. Tex. Mar. 27, 2014) (ordering production of private messages, except a select few about which an attorney submitted an affidavit asserting that those specific text messages repeated opinions and information communicated by the attorney); and *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 572 (C.D. Cal. 2012) (ordering the release of all relevant private social media communications relevant to the litigation, even communications with non-parties).

In spite of the overwhelming amount of case law that establishes that Courts have decisively rejected any notion of a right to privacy in private social media conversations, Ms. Provencher argues that the Fourth Amendment should apply to the documents she is attempting to withhold. Further, in support of this contention she discusses how the privacy rights enjoyed by parties in civil litigation has been criticized since 1976, and that Courts have noticed that Facebook describes some groups as public and some as private. Yet she provides no case law that applies the Fourth Amendment, *Katz v. United States*, 389 U.S. 347 (1967), or the 1976 criticisms of civil discovery processes, to the Federal Rules of Civil Procedures in general, or

9

specifically to the discovery processes governed by Rules 26, 34, and 37.

With one exception, the only cases Ms. Provencher provides to support her contention are cases dealing with criminal law, constitutional protections of privacy in a criminal context, and cases that describe the difference between a private and public Facebook group but don't hold that that distinction matters when it comes to civil discovery processes.

The one exception to the above is *Potts v. Dollar Tree Stores, Inc.*, No. 3:11-CV-01180, 2013 WL 1176504 (M.D. Tenn. Mar. 20, 2013), which Ms. Provencher quotes in her March 24th, 2021 filing (Docket No. 79). That is the one case cited by the defendant that has any present applicability. Ms. Provencher correctly states that *Potts* requires the movant to show that any documents he seeks to compel actually have relevant discoverable material in them.

Major Mazzara has met that burden several times over in this filing and his motion to compel. The only issue left is Ms. Provencher's state of mind when she defamed Major Mazzara. These are statement by Ms. Provencher about Major Mazzara proximate in time to her defamatory statements. These statements were placed on a privilege log of responsive but allegedly "privileged" documents. Ms. Provencher has fought with unusual legal arguments to keep this limited set of documents from Major Mazzara, etc. Major Mazzara has met his burden.

Finally, while *Potts* does not work for Ms. Provencher's argument, it ultimately supports Major Mazzara's. The Court in *Potts* decided that handing over an entire computer to an opposing party was appropriate, and that the parties could extract

the relevant documents via a word search conducted by a neutral party. Major Mazzara suggests that a word search is likely how Ms. Provencher identified the documents she put on her privilege log and that are currently at issue in this case. As proof, Major Mazzara has included an un-edited version of two of the documents Ms. Provencher has already provided, with his name highlighted on it in the original. This shows that Ms. Provencher used exactly the system used in *Potts* to find relevant material.[20] The documents being withheld were likely found via the same or similar means, Ms. Provencher having already done the work of sifting through her electronic files for relevant documents, which was the role of a neutral party the Court ordered the opposing parties to hire in *Potts*.

## CONCLUSION

Based upon the foregoing and the reasons stated in Plaintiffs' motion to compel, Defendant's motion for a protective order must be denied, and Plaintiff's motion to compel must be granted.

WHEREFORE, Plaintiff requests that this Court grant his Motion to Compel, deny Defendant's Motion for Protective Order, and grant such other and further relief to which he may show himself to be justly entitled.

---

[20] Plaintiff's Exhibit 4 (DP-066, and 109 are included. Ms. Provencher's comments are in purple or blue on the right, and the comments of a Sarah Mason and a Jenne O'Neill are on the left. Notably, at the top of DP-109 it says "2 of 2 Results for "Mazzara").

Respectfully submitted on March 24, 2021.

    Law Offices of William B. Kingman, P.C.
    3511 Broadway
    San Antonio, Texas 78209
    Telephone: (210) 829-1199
    Facsimile: (210) 821-1114

    By: */s/ William B. Kingman*
    William B. Kingman, State Bar No. 11476200
    ***ATTORNEYS FOR JOSEPH MAZZARA***

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was served via email and/or through ECF Notification on the following party in accordance with the Federal Rules of Bankruptcy Procedure on this the 24th day of March 2021.

Michael J. O'Connor
LAW OFFICES OF MICHAEL J. O'CONNOR
921 Proton Rd.
San Antonio, Texas 78258

    */s/ William B. Kingman*