agreed to conduct an *in camera* inspection of the discovery documents at issue in this proceeding. Thereafter, the Court took the Motion to Compel and Motion for Protective Order under advisement.

After the hearing, the parties submitted additional briefing. Provencher's Trial Brief in Support of Motion for Protective Order (ECF No. 79); Mazzara's Brief in Support of Plaintiff's Motion to Compel and in Opposition to Defendant's Motion for Protective Order (ECF No. 80). On March 17, 2021, the Court received a sealed envelope from Provencher containing documents for *in camera* review. The Court reviewed the documents *in camera*. The Court also considered the moving papers, post-hearing briefs, and the arguments given at the hearing. For the reasons stated herein and on the record at the Court's oral ruling on April 7, 2021,[1] the Court finds that: (1) the Motion to Compel is GRANTED; and (2) the Motion for Protective Order is DENIED. The Court will issue separate orders on each Motion.

## JURISDICTION

As an initial matter, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter is referred to this Court pursuant to the Standing Order of Reference in the United States District Court for the Western District of Texas. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I), in which the bankruptcy court may enter final orders. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL BACKGROUND AND FACTS

On May 24, 2019, Plaintiff filed his Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6) (ECF No. 1). On December 31, 2020, Plaintiff served Defendant with his First Request for Production of Documents. (ECF No. 66, Exh. A). On January 26, 2021,

---

[1] The Court adopted the oral ruling into this Memorandum Opinion.

Defendant provided her Responses to Plaintiff's Requests for Production. (ECF No. 66, Exh. B). Defendant refused to produce two categories of documents requested by Plaintiff. The first set of documents at issue is described as "[certain] bates numbered documents in the Defendant's possession that were stamped while she was represented in Virginia by Lee Berlik." (ECF No. 77, Exh. A). The second set of documents is "all documents and communications which relate to or support the factual basis of the Defendant's defenses contained in her Second Amended Answer on file in the Adversary Proceeding." (*Id.*). Defendant's privilege log states the documents requested—which consist of messages and posts in a private Facebook group—are protected under "anticipation of litigation, investigative privilege, and work product [privilege]." (*Id.*).

Plaintiff's Motion to Compel asserts "without more specific information about the documents being withheld, the privileges asserted by Provencher are inapplicable to the requested documents and such asserted objections and privilege are unsustainable." (ECF No. 66). Defendant did not respond to Plaintiff's Motion to Compel. Instead, Defendant filed a Motion for Protective Order. (ECF No. 70). Defendant's Motion for Protective Order deviates from the Privilege Log in that the Motion does not argue the discovery documents at issue are protected under anticipation of litigation, investigative privilege, and work product privilege. Instead, Defendant's Motion argues: (1) Plaintiff's request for documents invades third party privacy rights by seeking to access conversations Provencher had in a private Facebook group after Mazzara threatened to sue; and (2) the withheld documents are irrelevant in demonstrating Provencher's intent. (ECF No. 70, ¶¶ 6, 15). The Court will address each argument in turn.

    I.    **Third Party Privacy Rights**

The documents Plaintiff requests are posts and chats in a "Secret Facebook Group" called "Christendom Survivors: The Order of the Phoenix." (ECF No. 79). The Defendant states the

3

Secret Facebook Group cannot be found via search, and a third party cannot be a participant in the group without permission from the group members. Defendant states the documents requested are "posted conversations between Defendant and various third parties which took place in a restricted interest chatroom for survivors of sexual assault and their supporters." (ECF No. 70, ¶ 3).

Defendant argues the private posts made in the Secret Facebook Group are protected because chat participants—in particular, participants who are not litigants in this case—have a reasonable expectation of privacy under the United States Constitution. According to Defendant, members of the Private Facebook Group shared feelings, engaged in "supportive venting," and discussed rumors concerning parties unrelated to this litigation. Defendant suggests that Plaintiff could glean the "identities and thoughts" of the Secret Facebook Group members (ECF No. 79) and sue "everyone who participated in any conversation which mentions his name in any derogatory context if the posts are made available to him." (ECF No. 70, ¶ 9). Defendant argues that disclosure of conversations on the Secret Facebook Group would result in members "[losing their] constitutionally protected reasonable expectation of privacy." (ECF No. 79).

To support her argument, Defendant cites two cases: *In re Disposable Contact Lens Antitrust Litig.*, Case No. 15-md-2626-J-20, 2019 U.S. Dist. LEXIS 209400, at *108 (M.D. Fla. Nov. 27, 2019) and *United States v. Meregildo*, 883 F.Supp.2d 523 (S.D.N.Y. 2012).

Defendant argues that *Disposable Contact Lens Antitrust* supports her argument that "Courts recognize the distinction among Facebook's group privacy definitions." (ECF No. 79). The *Disposable Contact Lens Antitrust* case—a case dealing with anti-trust litigation—has no bearing on this case, because the court there does not discuss whether conversations in a private Facebook group are subject to a reasonable expectation of privacy. 2019 U.S. Dist. LEXIS 209400, at *109. Rather, the court discussed—briefly, and in passing—that the litigants were part of a

4

private Facebook group. *Id*.

Next, Defendant contends the conversations in the Secret Facebook Group cannot be disclosed in discovery because the Group was set up for the express purpose of preserving the members' privacy rights. (ECF No. 79, p. 5). Defendant argues she should not be required to turn over the documents requested because members of the Secret Facebook Group are entitled to retain their third-party privacy rights.

Defendant presents a criminal case, **United States v. Meregildo**, to demonstrate the difference in privacy rights between when a party makes disclosures to Facebook "friends" generally (like the criminal defendant did in **Meregildo**) and when a party posts on a Secret Facebook Group (like Provencher did in this case). 883 F.Supp.2d at 525. The **Meregildo** court held the government did not violate the Fourth Amendment when a cooperating witness, who was one of the defendant's Facebook "friends," gave the Government access to defendant's Facebook profile. *Id*. at 526. Defendant contends "there has been no such waiver" in this case because "the Phoenix Group's members and administrator set up the Facebook group for the express purpose of preserving the members' privacy." (ECF No. 79). The Court finds this argument unpersuasive.

Defendant does not cite, and the Court could not find, any case that extends the Fourth Amendment to limit discovery among private parties in civil cases on the basis of a "reasonable expectation of privacy." Plaintiff's Brief cites a number of cases to support his argument that materials posted on a Secret Facebook Group—including Provencher's correspondence on the Christendom Survivors: the Order of the Phoenix group—are not privileged. *See* **Davenport v. State Farm Mut. Auto. Ins. Co.**, 11–cv–632–J, 2012 WL 555759, at *1 (M.D. Fla. Feb. 21, 2012) ("Generally, [Social Networking Site] content is neither privileged nor protected by any right of privacy.") (citation omitted); **Tompkins v. Detroit Metro. Airport**, 278 F.R.D. 387, 388 (E.D.

5

Mich. 2012) ("[M]aterial posted on a "private" Facebook page, that is accessible to a selected group of recipients but not available for viewing by the general public, is generally not privileged, nor is it protected by common law or civil law notions of privacy."); *McGowan v. S. Methodist Univ.*, No. 18-CV-141, 2020 WL 2199189, at *2 (N.D. Tex. May 6, 2020) ("Social media information is usually considered discoverable and 'is neither privileged nor protected by any right of privacy.'") (citation omitted).

As far as the Court is aware, there is no binding Fifth Circuit case law on whether Secret Facebook Groups are protected by a right to privacy. The Court, however, observes that the general consensus among courts that have dealt with the issue is that social networking content is discoverable, so long as the requests are not overly broad, unduly burdensome, irrelevant, or disproportionate. *McGowan*, 2020 WL 2199189, at *2. Moreover, the Federal Rules of Civil Procedure permit broad discovery with little differentiation between public and private content. In *Seattle Times v. Rhinehart*, the Supreme Court of the United States observed:

> The Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach. Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action. Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties.

467 U.S. 20, 30 (1984); *Sorenson v. Fedex Kinko's Off.*, Civil No. SA-06-CA416-FB, 2007 WL 9710429, at *1 (W.D. Tex. Sept. 10, 2007). For the foregoing reasons, the Court finds that the posts from the Secret Facebook Group in this case are not protected from discovery under a constitutional right to privacy.

## II.  Other Asserted Privileges

Defendant's privilege log describes the correspondence in the Secret Facebook Group as privileged on the grounds of "anticipation of litigation, investigative privilege, and work product."

(ECF No. 77, Exh. 2). Defendant's Motion for Protective Order, however, does not include any evidence or argument explaining why the investigative privilege applies. "The party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." ***In re Santa Fe Int'l Corp.***, 272 F.3d 705, 710 (5th Cir. 2001). Because Defendant has not attempted to support her claims for investigative privilege, the Court finds the investigative privilege is inapplicable.

Defendant's Motion for Protective Order argues briefly that the documents-in-issue are privileged because they were made in anticipation of litigation. Defendant notes "the Private Posts were made after the plaintiff threatened to sue the defendant, hence the reference to 'anticipation of litigation in the privilege log.'" (ECF No. 70, ¶ 6). Per Defendant, the Private Posts contained "expressions of support of [Provencher's] friends, and the members 'venting' legal speculations and advice regarding threats of this lawsuit." (*Id.*).

The work product doctrine "insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." ***Dunn v. State Farm Fire & Cas. Co.***, 927 F.2d 869, 875 (5th Cir. 1991). "The burden of establishing that a document is work product is on the party who asserts the claim." ***Hodges, Grant & Kaufmann v. United States***, 768 F.2d 719, 721 (5th Cir. 1985). To assert work product privilege, a party must show: "(1) the materials sought are documents or tangible things; (2) the materials sought were prepared in anticipation of litigation or for trial; (3) the materials were prepared by or for a party's representative; [and] (4) if the party seeks to show that the material is opinion work product, that party must show that the material contains the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party." ***S.E.C. v. Brady,*** 238 F.R.D, 429, 441 (N.D. Tex. 2006). Provencher has established that the materials sought

7

are documents. Provencher, however, has not established that the materials were prepared in anticipation of litigation by or for her lawyer. Moreover, Provencher has not argued that the material contains mental impressions, conclusions, or legal theories of her attorney or of another representative. Therefore, the Court declines to find that the Secret Facebook Group posts or conversations are protected by work product privilege

In sum, Provencher has not met her burden to demonstrate that the documents-at-issue are privileged based on a reasonable expectation of privacy under the Fourth Amendment, anticipation of litigation, investigative privilege, or work product privilege. As a final matter, the Court must consider whether the discovery sought is relevant.

### III. Relevance

Rule 26(b) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." The Court is required to "[consider] the importance of the issues at stake in the action," "the importance of the discovery in resolving the issues," and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) (West 2021). Generally, the scope of discovery is broad and permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." ***Crosby v. La. Health Serv. and Indem. Co.***, 647 F.3d 258, 262 (5th Cir. 2011) (citing Fed.R.Civ.P. 26(b)(1)). "Courts have traditionally construed 'relevance' broadly: information is relevant if it 'encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" ***Coughlin v. Lee***, 946 F.2d 1152, 1159 (5th Cir. 1991) (citation omitted).

Defendant argues the Federal Rules of Civil Procedure do not grant a requesting party "a generalized right to rummage at will through information . . . limited from public view" but instead

require a "threshold showing that the requested information is reasonably calculated to lead to the discovery of admissible evidence." (ECF No. 70, ¶ 12) (citing *Tompkins* 278 F.R.D. at 388). Defendant contends discussions in a Secret Facebook Group have no bearing on whether Plaintiff acted with objective substantial certainty of harm as required under § 523(a)(6). The Court disagrees.

The Virginia State Court entered a default judgment for defamation in a lawsuit centered on Mazzara's allegations that Provencher posted a message on the Christendom College Alumni Facebook page accusing him of sexual assault. In the Order Granting in Part, Denying in Part Mazzara's Motion for Summary Judgment (ECF No. 56), this Court found that the Judgment entered in Chesterfield County District Court would be given preclusive effect as to the dollar amount of the debt and the finding of defamation. The only issue that remains in this Adversary Proceeding is whether Provencher had the requisite intent under § 523(a)(6). Defendant's communications in the Secret Facebook Group are relevant in that they could reasonably serve as evidence to demonstrate Provencher's state of mind when she posted about Mazzara on the Christendom College Alumni Facebook page. Furthermore, after conducting an *in camera* inspection, the Court finds that the documents requested are not overly broad, burdensome, or irrelevant to the lawsuit.

## Conclusion

For the foregoing reasons, the Court concludes the Motion to Compel Production of Documents (ECF No. 66) is granted and Defendant Donna Shute Provencher's Motion for Protective Order (ECF No. 70) is denied. The Court will issue orders consistent with this Memorandum Opinion.

###